The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. We're ready to proceed, Your Honor. Okay, thank you. First argued case this morning is number 191720, Google LLC v. Netlist, Inc. Ms. Hines, please proceed. Thank you very much, Your Honor. May it please the court. Dory Hines on behalf of the appellants. Netlist's arguments in this appeal demonstrate two things. Why claim construction was necessary and why the board's decision did not comply with the APA and how the board's prior art analysis was incorrect. Let me address claim construction first. Netlist, on page 41 of its brief, addresses the logic element and its claim construction. And Netlist says, by requiring a logic element that responds to all four enumerated signals, the claims cover a logic element that responds to all four of the enumerated signals at least some of the time. And that at least some of the time is important. The construction that Google argued was that the claim phrase, at least in part and at least, required a disjunctive construction. And Netlist, by its argument, appears to agree. If the claims cover a logic element that at least some of the time does not respond to all four enumerated signals, that's the disjunctive construction. Then the claims are invalid based on what the board has already found. The board found that a needy discloses generating output chip select signals based on input chip select signals and a row address signal. And that's confirmed at appendix 123 to 24 and addressed in Google's main brief of pages 48 through 49. Ms. Hines, this is Judge Bryson. Your argument, beginning with the at least in part, is that argument the same with respect to the claims that do not contain that language? Correct, Your Honor, and I have two points on that. Why would that be, since you're relying on that particular phrase, which I gather is not present in some of the claims? Well, all the appealed claims either require at least or at least in part. And Google's position is that the construction is the same whether the language is at least in part or at least. I'd also point out that the board in its rehearing decision found that claim one is representative of all of the other claims. Claim one does include the language at least in part. So in our view, the construction of the logic element, and whether it is disjunctive or not, does not change depending on that variation in claims. Counsel, I am not sure I agree with your characterization of Netless' argument, and certainly they'll correct me if I'm wrong, but I understand what Netless to be saying is that it must respond to all four at the same time to infringe, but it doesn't have to always be in an infringing mode. Is that different from what you described? Well, I think at the very least it's unclear. And what Google's position is is that the board, after Netless amended its claims in 2016 to include this language, and to fundamentally change the claims, the board was required to perform a claim construction analysis. And so the confusion that's generated by the arguments that Netless is making on appeal really just confirms why the board should have done claim construction in the first place. What's important is what the board said, not what Netless characterizes it as. I mean, the board definitely said that it was in the conjunctive and that it had to respond to all four, period, and said that the plain language of the claims got them there. Isn't that enough? It is correct, Your Honor, that the board said there was a conjunctive construction. But the problem here is when Netless amended its claims, the original claims before 2016 through the reexamination, required that the logic element receive certain signals. Netless amended its claims in 2016 to require that the logic element generate signals in response to those input signals. The board recognized that shift in the claims, and much of its second decision is directed to that issue. What the board did not do and failed to do was to address the roles of the signals, the roles of those input signals in the generation and perform claim construction, recognizing that shift in the claims. So while it is true that the board said it was a conjunctive construction, the board never explained how that could be so or what the role of the input signals was. And that's particularly important with respect to the bank address signals. The bank address signals, as the parties recognized, discussed a lot in the record, can have two different functions. It can either be... It sounds like you're going down a written description road. That's different from what the claims assert, right? Well, Your Honor, it is not... You have to explain everything about how the system works when all it's doing is trying to decide if that language requires disjunctive or conjunctive examination of the four signals. Well, because construing the claims, you must do it in looking at the specification. It must be consistent with the specification, and the specification must be examined. So we are not making a written description argument. What we are arguing is that in construing the claims, the board was required to look at the specification, and in looking at that generating operation, what was and in what circumstances can both a bank address signal or bank address signals and a row address signal be used to generate those output signals that are claimed, and what's the role of those in that generation? Now, what the board implicitly found when looking at the prior art was that the bank address signals have the same function as the row address signal, and the board makes that point on Appendix 136. They cite to the earlier board decision at Appendix 69 and 67. So it appears that the board found that the bank address signals will be density bits. They will have that role in memory expansion similar to the row address signal. Now, the problem with that is that construction and requiring both the input bank address signals and the row address signal to perform that function is not consistent with the specification. The specification explains that it is the row address, column address, or internal bank address bit that acts as a density transition bit. It is not all of them. It is one of them, and that's at column 12, lines 29 to 32. And Table 1 is consistent with that. Table 1 identifies what signals are used to generate the output signals, and Table 1 shows that it is chip select signals and the row address signal, and the bank address signals are not shown at all. And Netlist's expert agreed with that. At the very beginning of the reexamination, he described the operation of Table 1. The logic element 40 generates the appropriate chip select signals in response to the input chip select signals, the row address bit, and the command signal, and that's at Appendix 950 at Paragraph 97. Netlist's expert, in explaining Table 1, recognized that your entire argument with respect to this language was about three sentences long. And the Board found that to the extent that you wanted them to look beyond the plain language of the claims or the clear references to those limitations in the claims, you had waived that right. Well, we respectively disagreed, and we addressed this in our reply brief. The arguments were longer than three sentences. The arguments were raised at the appropriate time. As soon as the claims were amended at the first opportunity, Google raised this issue and re-raised it again, raised the issue twice. There is no, and Netlist has not argued, that there's any issue of a waiver. It was a presented and a requested argument that Google made, but that the Board did not address. And we continue to raise the argument now. The disjunctive or, excuse me, conjunctive construction is not supported by the specification. It's not supported by any language that addresses how output signals are generated. And when Netlist amended its claims to change the claims from ones that receive input signals to a logic element that generates input signals, that was important. And the Board spent a lot of its time addressing that issue. And it should have been addressed with respect to the claim construction as well. And let me discuss the prior art. In the prior art, the parties agree and the Board found that a MEDI does disclose the disjunctive construction and would meet the claim elements if construed in that way. The DEL2 reference teaches the use of bank signals in memory expansion. It teaches directing bank addresses signals to a logic element. So they are received. Multiple bank address signals are received. By a logic element, by the combination of a MEDI and DEL2. Now, on appeal, Netlist points out that the Board's decision for the proposition that in looking at the 912 patent and the logic element in the 912 patent, each input signal to the logic element 1A, in figure 1A, must be used in some manner, whether directly or indirectly, to generate the recited output signals. And in fact... So, is it your position that if we agree with your claim construction, simply reverse the Board or would we need to remand? If the Court agrees with our claim construction, you can reverse. Because the Board has already found that a MEDI discloses the disjunctive construction and the combinations of a MEDI would meet all the claim elements. So the Court can reverse on that basis. Okay. Any more questions for Ms. Hines?  At the moment? Thank you, Your Honor. Okay. All right. Thank you. We'll hear from Mr. Lloyd. Yes, Your Honor. May it please the Court, Seth Lloyd for Netlist. The Board correctly found Netlist claims patentable after nearly 10 years of reexamination. It correctly gave the claim term and its plain conjunctive meaning, and it made many well-supported findings on patentability, including resolving the battle of the experts. On claim construction, and plainly means and. It's conjunctive. Nothing about at least in part or at least transforms and into or. As the Board explained at Appendix 77 and 88 to 91, at least in part makes clear that each of the specified signals must be used in some way or in some fashion to generate the output, but other signals may also be used. Other claim language confirms the plain meaning. The claims require that the logic element receive all four of the specified signals, although it may also receive other signals. And it must receive those signals because it must use them in generating the output. That's also what the specification shows. At Figure 1A, it shows a logic element that receives all four of the specified signals and generates output in response to them. And contrary to what Council for the Other Side has said, at Columns 7 to 9, the specification explains how the logic element uses each of those signals. It can, for example, respond directly to the input chip select signals and the row address signal and indirectly to the bank address and PLL clock signals in generating the output. Council, it is a little disconcerting that when you have different language that is employed that we are not to assume that there's a difference between the two phrases. So what is your position with at least in part and that addition into the claim? To be clear, Judge O'Malley, Google has agreed, as you heard, that nothing in this appeal turns on the difference between at least in part and at least. But I think the board did give meaning to both of those phrases. At least in part does at least two things, I think. At least in part makes clear that other signals can be used. That's the first thing. And second, it makes clear how the signal must be used, that the signal can be used in some way in part directly or indirectly. I think for a claim that doesn't have the in part, you'd have to look to other claim language to determine whether the second of those still applies. But at least in part makes clear that the signal can be used in some fashion or in some way. And that was the board's understanding. The board did explain that, contrary to what Google says, when it rejected an argument by INFI at Appendix 77 that at least in part was ambiguous. And it also rejected an argument by INFI that there was a lack of written description for at least in part. And the board said, as I did just now, that at least in part simply requires that the signal be used in some fashion or in some way or directly or indirectly. I think that explanation is more than adequate under the APA. As the court has already noted, the board was express in adopting its construction that it was conjunctive. And that was more than enough to resolve the issue Google raised, which was simply Google quoted the claim language and said it's just conjunctive. The APA does not require the board to do more than that, but the board did do more than that because it also explained how it understood the term at least in part. I'm happy to answer more questions on claim construction, but if the court has none, I'll proceed to obviousness. Under the board's claim construction, the board found many gaps between the prior art and the claims. It was not simply a difference between one or multiple signals. None of the prior art the board found discloses the claim logic element. And Google and INFI relied on their experts to try to supply the missing limitation. But the board repeatedly refused to credit their experts. For example, it found that INFI's expert gave mere assertions that he offered unsupported beliefs. That's at appendix 83 to 84. And that his testimony was not persuasive. That's at appendix A128. Google's expert, the board found, gave testimony that was directly contradicted by the references. That's at appendix 100. His testimony conflicted with Google's own position. That's at appendix 138. And his testimony clashed with his earlier testimony. That's at appendix 140. In contrast, the board credited our expert, Dr. Seachin, on key issues, including finding that, at least in one part, his testimony was unrebutted. That type of dispute between the experts and the choice between which expert to credit on competing issues is exactly the type of decision that was for the board to make. The board did make it. It explained why it found the testimony unpersuasive from the other side. And that's the type of issue that this court defers to the board on. In terms of some of the points that we heard from the other side. What is your response to the point that Google makes that the expert testimony was mostly with respect to a previous version of the claims? And so why should that testimony be relevant to these claims? Well, it's not correct, Judge O'Malley, that the expert testimony was, at least for our expert, that it was in reference to the previous version of the claims. Our expert gave three different declarations, and the third of those was after the final amendment in which he walked through the specific reasons why the amended claim language was different and rendered the claims patentable over the prior art. Google, for its part, chose not to. It had the option, but Google did not put in an additional expert report after we amended the claims. Infi did, but the board found that expert testimony unpersuasive. So the testimony was directly on point, and the board, in its final decision, cited that third declaration multiple times. And in reference to some of what Google said, our expert, in his first declaration, this is at appendix 946 to 950, he did explain how the logic element uses all four input signals. He explained Table 1, but he went on to explain how the logic element of our patent also responds to input bank address signals and a PLL clock signal. And in doing so, achieved something that none of the prior art was able to achieve. Google also has suggested that there was some ambiguity about the role that the input signals have to play in generation, but the board was expressed in what role the signals have to play. It was the earlier claims, Judge O'Malley, in terms of the difference of the claims. Claim 1 previously required a logic element that generates output in response, at least in Part 2, a bank address signal. So the in response, at least in Part 2, language was always there, at least at that point. The only change was to add additional signals joined by the conjunction and. And in interpreting that earlier language in response, at least in Part 2, a bank address signal, the board explained how the signal must be used. Excuse me. It must be used in some way or in some fashion. There was no limit based on whether a signal was a density transition bit or not. Simply must be used in some way according to the board. Okay, thank you. I think those are the points I had on the merits of obviousness and on claim construction. I'm happy to answer any additional questions if the court has them. Otherwise, we would ask that you affirm. Let me ask you a question, if I may. Going back to your claim construction argument, I understand that it is in part predicated on the prosecution history. Could you walk me through the particular portion of the prosecution history that you think supports the claim construction that the board has adopted? Yes. I think there are a couple parts. I think the main and most important part, Judge Bryson, is the portion I just said. And the board recognizes this at Appendix 122. That Claim 1 previously recited. If you're following along in the appendix, the last whole thing. I'm grabbing my appendix right now. Let me just wait. Figuratively speaking. All right. 122, yes. So Appendix 122, the last whole paragraph there, the sentence starting with moreover. The board says, moreover, Claim 1 previously recited, the logic element generates gated column access strobe signals or chip select signals in response at least in part to a bank address signal. So it recognizes the claim we already looked at, the language of in response at least in part to a bank address signal. And the only difference here, the board continues, the claim did not recite that the cast signals or chip select signals were in response to bank address signals as well as signals 1, 3, and 4 as now recited. So it's the as well as language that really you are finding the most compelling, I take it? It's the as well as and the and, Judge Bryson. The board recognized, look, we already interpreted in response at least in part to. We said it simply requires using the signal in some way, directly or indirectly. And the only change now to the claims is that you've added additional signals joined by the conjunction and. And given that prosecution history and the board's own prior explanations, I think the only reasonable reading of this claim language is that you must use all four of these signals, although you can also use other signals. And you must use them in some way in part to generate the output. Counsel, the prosecution history, I mean, how can you actually say that it's such a thing as prosecution history when the prosecution isn't closed? I think just at the simple high level that we were just talking about here in terms of the board had already said, this is how I understand the claim language. We then built on the board's own understanding of the claim language. I think that that's just kind of relevant additional evidence. But, of course, I think that the plain claim language and the specification on their own already require the same result. I think we could have an academic debate about whether there could be something like disclaimer or disavowal in this context where prosecution is ongoing. But we made numerous statements to the board repeatedly that our claims require a conjunctive construction, which I think is just sort of the cherry on top of all of the other intrinsic evidence, which points only one direction here. Okay. Any more questions for Mr. Lloyd? No. No. All right. Thank you. Then we'll hear from Ms. Hines, and we've run over a little bit. So please extend the rebuttal time, Mr. Lichtenberg. Make it six minutes. Perfect, Your Honor. Okay. Please proceed, Ms. Hines. Thank you very much. Let me address Appendix 122 that counsel just addressed. And there the board was addressing the previous claims, and the claims were amended, and that's important. Yes, the claims previously recited, the bank address signal and that gated CAS or chip select signal were generated in response to that. But the claims were amended, and that's important. And the claim amendments required, and the board discusses that on the next page in Appendix 123, that the logic element as amended must generate output chip select signals, gated CAS signals, now in response to all four signals. And what the board says at Appendix 123, however, as now claimed, recognizing the difference between what was previously claimed and the claims that are now on appeal, claim one recites the logic element, generates chip select signals in response to signals one through four, recognizing and highlighting the distinction between the previous and new claims. And that generation is important. And what the board did not address is the impact that claim change made on the construction, and looking at the specification and how the specification addresses the generation in response to input signals. What the board found in looking at the prior art is that bank address signals operate the same way as row address signals, and that they operate as density transition bits. And Google's position is that apparent construction, and along with a conjunctive construction, is not supported by the specification, that that construction is inconsistent with the specification. Council also said that as long as the signal is used in some fashion or in some way, but that's not what the board said. What the board said in looking at the prior art and the question the board asked is, do the bank address signals operate as density transition bits? Do they operate in the same way as the row address signals in a METI? That's how they were looking at them, and that analysis is incorrect. It's inconsistent with the specification. One other point with respect to the prior art, the board in its original decision was looking at figure 1A, and council referenced figure 1A for showing receipt and also generation of the output signals. And the board was confronted with an argument that, well, figure 1A is just a black box. And the board said no. Signals that enter the logic element 40 have some purpose and affect the output signals. The board said that at appendix 91. The board also recognized that the prior art shows bank address signals, row address signal, clock signal. All those signals, all of the recited signals are input to a logic element. The prior art discloses that. So if it's true with respect to the specification that signals that enter logic element 40 have some purpose and affect the output signals, the very same thing should be true for the prior art. Instead, the board said that there wasn't sufficient evidence to address why one skilled in the art would have recognized the logic element, like a METIs, generates chip select signals. And the board said that at appendix 126. But again, in looking at the specification and the disclosure there and figure 1A, which counsel referenced, the board said, well, just seeing that they are received by the logic element, accepting that they are, the fact that they enter the logic element, they would have some purpose and affect the output signals. The same should be true with all of the pieces of prior art. And NETLIST confirms that. Page 37 of its brief. NETLIST relies on the board's decision at appendix 88 to 91 for the proposition that each input signal to the logic element 1A of the 912 patent must be used in some manner, whether directly or indirectly, to generate the output signals. If that's true for the 912 patent specification and the board found it was, the same should be true for the prior art as well. Unless there are any further questions, I have nothing more. Any more questions for Ms. Hines? No. Okay. Thank you. Thank you both. The case is taken under submission.